STATE *ex rel.* NORMAN, Relator, *v.* JOHN W. SMITH *et al.*, Respondents.

1. *County seat — Seat of justice must be within the limit originally selected.*— The seat of justice in a county is the place originally selected in pursuance of law, and can not be subsequently removed to a site within the extended town limits. An addition to a county seat is not the established seat of justice within the purview of the statute.

Did such power of removal exist, the exercise of it by the County Court would be discretionary and its action final.

State ex rel. Norman, relator, v. Smith et al.

## Petition for mandamus.

*Dryden, Lindley & Dryden*, and *A. D. Mathews*, for relator.

I. The County Court, after removing its sittings to the seat of justice, has no discretion that will permit it to hold elsewhere its sittings.

II. The town may be enlarged by additions without affecting the seat of justice. "The place selected by the commissioners" (Wagn. Stat. 396, § 8) "shall be the permanent seat of justice." How can the place selected be called the permanent seat of justice if it may be changed, as contended here, by the addition of a few lots to the town covering the seat of justice? What pretense is there for saying that railroad addition is the established seat of justice, within the meaning of the statute? (Wagn. Stat. 402, § 1.) The court, in holding its sessions beyond the limits of the established seat of justice, is acting in flagrant violation of the law, and should be required by this proceeding to return to the limits within which it may hold.

*Ewing & Holliday*, for respondents.

A seat of justice may or may not be incorporated; there is no law requiring this to be done. But if it should be, it may or may not include all or any part of the land acquired for this purpose, or the site of the court-house or other public buildings. The boundaries may be fixed, of course, without reference to any such considerations. It by no means follows, therefore, that because a court-house is not within the original donation, or within the corporate limits, it is not at the seat of justice or at. the town of Lebanon. It is only by the name given to the town comprising the seat of justice, that the latter has any distinctive name or distinctive locality. The phrase "at the seat of justice," as used in the laws, has no signification different from its conventional sense or common acceptation — the same, for instance, in which we are to understand the provisions requiring certain officers to reside "at the seat of government."

WAGNER, Judge, delivered the opinion of the court.

This is an application for a writ of *mandamus* to compel the justices of the County Court of Laclede county to hold their sittings in the town of Lebanon, the original seat of justice for said county. The petition filed in the first instance conjoined the judge of the Circuit Court holding his court in that county, and also demanded that the County Court should be ordered to proceed to erect certain buildings, etc.; but that was subsequently withdrawn, leaving the proceedings solely against the County Court, as above stated.

It is wholly unnecessary, for the purposes of determining this case, to notice or examine the charges of corruption, combination, or sinister motives which have been made in the pleadings, or to particularly comment on the evidence which has been submitted, as the whole question simply turns upon the power of the County Court, and involves the legal construction of the statute only.

It seems that the county of Laclede was organized by an act of the general assembly of the State of Missouri, entitled " an act to organize the county of Laclede, approved February 24, 1849," and that, by the provision of the act, commissioners were appointed to locate the seat of justice; that the commissioners, in the discharge of their duties, selected as the seat of justice for said county the tracts or parcels of ground on which the original town of Lebanon was afterwards built. The commissioners received as a donation for said county seat fifty acres of land, and on the first day of October, 1849, made report of their proceedings, accompanied by the deeds and abstracts of title to the land, to the Circuit Court, which court approved the title to the lands, and caused its approval to be entered on the records, and certified to the tribunal transacting county business for the county.

It further appears that in November, 1849, the tribunal transacting county business appointed a commissioner of the seat of justice, and caused the tracts of land so selected as the seat of justice to be laid off in town lots and blocks, and that, in the sale, block numbered two in the tract so laid off was reserved for

the purpose of erecting thereon the public buildings of the county; that block numbered two has ever since been known as the Public Square, and that in 1850 the County Court caused the court-house to be built thereon; that the court-house remained there till the summer of 1862 or 1863, when it was removed by order of the military authorities of the United States to a lot adjacent to and fronting on the Public Square, where it has ever since remained; that said court-house has been continuously used for the transaction of business connected with the court, from the year 1850 till about the 21st day of February, 1870, at which time, by order of the County Court, the clerk's offices were removed to what is known as the first railroad addition to the town of Lebanon, and subsequently the courts were ordered to be held, and actually were held, at the last-named place. This first railroad addition lies about three-fourths of a mile distant from the limits of the original town of Lebanon, and there is another addition which lies intermediate between it and the town.

The question is, had the County Court the legal right to make the removal, and order the sittings of the court to be held at a place different from the original town where the seat of justice was established?

The argument that the principal part of the business has left the old town and gone to the railroad addition, and that the sitting of the court there is conducive to the public interests, is of no consequence here. We can not be governed in our decision by any such consideration. If the power exists, the exercise of it by the County Court is discretionary, and its action is final. If, however, the court has no such power, and it has transcended the scope of its authentic jurisdiction, no question of expediency or convenience can justify its course or sustain its action.

The statutory provisions which were in operation when Laclede county was organized were not different from what has been imported into our present statutes. I shall, therefore, refer to the latter only.

The chapter in reference to the organization of counties provides for the commissioners on the seat of justice obtaining land, by purchase or donation, for the seat of justice, and requires the

donor, or vendor to execute and deliver to the commissioners a deed conveying to the county the land so purchased or donated, in fee simple, without any reservation or condition whatever, and an abstract of the deeds, conveyances and assurances, through which such donor or vendor claims or derives title. The commissioners are then to make report of their proceedings, accompanied by such deeds and abstracts, to the Circuit Court of the county at its next term; and if the court approve the title, it shall cause its decision to be certified to the tribunal transacting county business, and the title of the land so conveyed vests in the county, and the place selected shall be the permanent seat of justice thereof. (Wagn. Stat. 395–6, §§ 6–8.)

By section 24 of the same chapter it is provided that, as soon as convenient buildings in which to hold the courts can be had, or a court-house and jail erected at the established seat of justice of any new county, the courts of such county shall be held at such seat of justice.

The record here declares the fact to be that buildings were erected at the original county seat, and had been in steady and constant use for about seventeen years.

Can it be said that the railroad addition to which the sittings of the court has been removed is the seat of justice, within the meaning of the law? It is true that an addition to a town for some purposes becomes a part of the town itself, and, when incorporated, the municipal regulations are generally extended alike to both. But there are some peculiar circumstances incident to the location of a seat of justice which are not applicable to subsequent additions. Where donations are made as inducements to any particular location, they are founded upon a supposed advantage that will accrue in favor of the place selected. Upon the idea that the county buildings will remain, and the location be permanent, people invest their money and acquire property; and to allow a court, without pursuing the course provided by law, to change the sessions to some other or rival location, would be a breach of faith and an act of injustice. It is very true, there is no permanent removal in this case; but if the place for holding the court can be changed temporarily in

the manner here attempted, it can be changed for an indefinite time, and all the evils complained of practically carried out. An addition to a county seat is not the established seat of justice within the purview of the statute.

By a recent amendment to its charter, the limits of the city of St. Louis have been extended so as to include Carondelet, several miles distant from the court-house. It will hardly be contended that, in pursuance of a discretion, the County Court of St. Louis county would have the power to remove the sessions of the court to Carondelet, should they think proper.

It is no answer to say that a better or more advantageous building can be procured in the new town or addition than is attainable in the original town, the county seat. It is the duty of the court to provide safe and suitable buildings for the convenience of the courts and the transaction of the public business. The statute invests them with ample authority for that purpose.

No valid or legal reason has been shown for the action of the County Court in this case, and I am, therefore, in favor of awarding the writ.

Peremptory writ ordered. The other judges concur.