THE STATE OF KANSAS, *ex rel. S. B. Bradford, Attorney General,* v. H. J. HARWI, *as County Clerk of Graham County.*

COUNTY SEAT—*Removal of Offices, Books, and Records.* Where the county seat of a county has been permanently located by a vote of the electors of the county, at a place not incorporated, but mentioned and described in a town plat duly executed, acknowledged and filed, which plat embraced fifty-six and ten-elevenths acres of land, the board of county commissioners of the county has no authority, in the absence of any vote therefor, to arbitrarily remove the county seat, or the county offices, or the books, records, etc., belonging to the county, to an addition subsequently laid out and platted, adjoining the original town site, where the county seat was located, although such addition is subsequently incorporated with the original town site, as a city of the third class.

*Original Proceedings in Mandamus.*

ACTION brought in this court, September 16, 1885, by *The State*, against *H. J. Harwi*, as county clerk of Graham county.

The opinion herein, filed at the June, 1887, session of the court, states the object of the action, and the material facts.

*S. B. Bradford*, attorney general, *D. C. Nellis*, and *Edwin A. Austin*, for The State.

*J. B. Johnson*, for defendant.

The opinion of the court was delivered by

HORTON, C. J.: This action is brought in this court to compel the county clerk of Graham county to remove his office, records, etc., from Graves's addition to the town of Millbrook, to the original town site of Millbrook.

On April 1, 1880, the governor issued his proclamation, declaring the county of Graham organized, and designating Millbrook as the temporary county seat. On July 12, 1881, a special election was ordered to be held in Graham county, to determine the permanent location of the county seat of the county. The vote cast at said election was canvassed on July 16, 1881, and no place having received a majority of all the votes cast, a second election was ordered to be held, the balloting to be confined to Gettysburg and Millbrook. The second election for the permanent location of the county seat was held on July 26, 1881. The vote was canvassed July 30, 1881, and Millbrook, having received a majority of all the votes cast, was duly declared the permanent county seat of Graham county. At the time of the designation of the temporary county seat of Graham county, and also at the time of the location of the permanent county seat of that county, Millbrook was unincorporated, but was mentioned and described as Millbrook, in a town plat, executed and acknowledged by N. C. Terrell, on the 2d day of May, 1879 — the land so platted being the north fifty-six and ten-elevenths acres of the west half of the northeast quarter of section twenty-seven, of township eight south, of range twenty-three west, in Graham county. No election for the removal or the relocation of the county seat of Graham county has been had or ordered since July 26, 1881. Millbrook became and con-

tinued to be the temporary county seat of Graham county until July 30, 1881, and thereafter became and continued to be the permanent county seat of that county.

On April 8, 1885, Benj. B. F. Graves and wife acknowledged and recorded a plat of a certain tract of land adjoining the original town site of Millbrook, and designated such tract of land as "Graves's addition to the town of Millbrook." On April 18, 1885, the county commissioners of the county entered into a contract with Benj. B. F. Graves and C. Tillotson for the removal of the several county offices from the original town site of Millbrook to lot 17, in block 30, in Graves's addition to the town of Millbrook; said lot 17 is distant from the original town site of Millbrook from one-half to three-quarters of a mile. On July 7, 1885, the board of county commissioners of Graham county by a written order directed all the county officers to remove their respective offices, records, books, etc., from the town site of Millbrook to Graves's addition. On July 14, 1885, the defendant, H. J. Harwi, county clerk, in pursuance of said order, removed his office, records, etc., to a one-story frame building on said lot 17, in Graves's addition, which had been donated to the county for a court house. On October 8, 1886, Millbrook was incorporated as a city of the third class, and embraced within the corporate limits is Graves's addition. The original town site of Millbrook is therefore now only a portion of the present city of Millbrook. The court house belonging to the county of Graham and situated in Graves's addition is valued at $2,500, and is occupied by all the officers of the county with the records of their offices. All of the buildings, with the exception of three or four, have been moved from the old town site to the addition, and in the addition there are from fifty to one hundred houses.

It is claimed upon the part of the defendant, that as it is impossible to obtain water upon the original town site of Millbrook, and as there is plenty of water in Graves's addition, and as all the principal part of the business has left the old town and gone to the addition, the removal of the county seat

to the addition was conducive to the public interests, and therefore that the county commissioners had the legal right to make the order of removal, and that it is the duty of the county officials to obey the same. The question is, whether the county comnissioners of Graham county have any authority to change the county seat from the original town site of Millbrook, where it was located by the voters, to the addition platted April 8, 1885. Sec. 119, ch. 24 Comp. Laws of 1879, reads:

"At the time of counting the votes at any election at which a vote shall be taken for the permanent location of the county seat, it shall be the duty of the judges or inspectors of the election in each precinct to canvass the votes cast for such location, and make a certified return thereupon to the board of county commissioners, wherein they shall state the whole number of votes cast, the name of each place voted for, and the number of votes given for each; which return shall be attested by the clerks, and shall be returned at the time of making other returns to the board of county commissioners, who shall, from such returns made to them, determine the whole number of votes given for each place in the county, which shall be entered upon the records in the office of the county clerk; and when some one place in the county shall have received the majority of all the votes cast in the county at one election, it shall be the duty of the county clerk, under his hand and seal, to certify the result to the secretary of state."

Chapter 26, Comp. Laws of 1879, provides:

"SEC. 6. The board of commissioners shall meet on the Saturday following said election, and proceed to canvass the vote; and the place having received the majority of all the votes cast shall be proclaimed by them the county seat of the county."

" SEC. 8. In case of a second election, the board of county commissioners shall meet on the Saturday following, canvass the vote and proclaim the result, as hereinbefore provided.

"SEC. 9. The county officers who are required by law to keep their offices at the county seat shall, within twenty days after said proclamation, remove all books, records, papers and furniture belonging to the county, to the place therein named; and if any officer shall fail to remove within the time prescribed by this section, he or his sureties shall pay to the county the sum of five dollars for each and every day of such

failure, to be sued for and collected by the board of county commissioners."

From these provisions of the statute it is evident that the place having received the majority of all the votes cast is to be the county seat of a county. In this case, the place selected as the county seat of Graham county was the original town site of Millbrook, located on fifty-six and ten-elevenths acres of land as platted, acknowledged and recorded by N. C. Terrell. The wisdom of the choice for the county seat made by the voters of Graham county may be questioned, but their power to make it is beyond dispute. As the original town site of Millbrook was selected as the permanent county seat of Graham county, we do not think the county commissioners of that county, or any of its officials, have the power to change or remove the county seat to any lot or tract of land not within the original town site. Did such power exist, the exercise of it by the county commissioners would be discretionary, and their action final; and if it existed, the offices of the county officials might be removed upon some addition, one, two, three or more miles from where the county seat was permanently located by the voters. (*The State, ex rel., v. Smith,* 46 Mo. 60.) If the electors of Graham county prefer Graves's addition to the original town site of Millbrook as the place for the permanent county seat of that county, they have the right, if they pursue the provisions of the statute, to select that place; but this power is denied the county commissioners or the officials of the county, unless a vote is taken therefor. An addition to a county seat is not, strictly speaking, a part of the original town site. (*The State v. Smith,* supra.)

*County board not to remove county seat.*

In this state, as well as Missouri, donations may be made to a county as inducements to obtain the location of a county seat at a particular place. (*Setter v. Alvey,* 15 Kas. 157; *Yoxall v. Comm'rs of Osborne Co.,* 20 id. 581; *The State v. Elting,* 29 id. 397.)

The peremptory writ of mandamus will be ordered as prayed for.

All the Justices concurring.