# Marengo County *et al. v.* Matkin.

*Bill in Equity to enjoin Removal of Court House.*

1. *Location of county seat; can not be moved to territory subsequently added to town designated as county seat.*—When a city or town is selected as the county seat, the boundaries of such city or town as they then exist, become the boundaries of the county seat; and the subsequent inclusion of more territory in such city or town does not enlarge the county seat; and, therefore, the commissioners court of a county is without authority to build a new court house upon territory added to the town designated as the county seat after the establishment or designation of such town as the county seat..

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. THOS. H. SMITH.

The bill in this case was filed by the appellees, residents and tax payers of Marengo county, against Morengo county, Samuel P. Prowell, individually and as probate judge of said county, and against the members of the court of county commissioners individually and as members of said court and F. M. Dodson and W. T. Hand individually, and as members of the firm of Dodson & Hand. The purpose of the bill was to enjoin the removal of the court house of the county of Marengo county from its present location in the town of Linden to another location in said town; for the delivery up and cancellation of a contract made by the county for the erection of a new court house on a new location, and for the delivery up and cancellation of county warrants alleged to have been issued for the purpose of erecting said new court house.

A preliminary injunction was issued by the judge of the circuit court. The averments as disclosed by the bill necessary to an understanding of the decision on the present appeal are sufficiently shown in the opinion. The defendant answered the bill, and also demurred to it upon the following grounds: 1. That it did not appear

[Marengo County *et al.* v. Matkin.]

that the court house was to be removed beyond the corporate limits of Linden. 2. That it appeared the new location was within said corporate limits. 3. That the same was a valid exercise of the powers of the court of county commissioners of Marengo county. 4. That the chancery court, under the facts set out in the bill, was without jurisdiction. 5. That it did not appear that the commissioners court exceeded its legal authority in the premises. The defendants also moved to dissolve the temporary injunction upon the denials of the answer and for want of equity in the bill.

On the submission of the cause the chancellor rendered a decree overruling the motion to dissolve the injunction and overruling the demurrers interposed to the bill. From this decree the defendants appeal, and assign the rendition thereof as error.

MALLORY & MALLORY, CANTERBURY & GILDER, R. H. CLARKE, J. M. MILLER, W. A. COLLIER and ELMORE & HARRISON, for appellant.—The main issue in this case is:

Has the Court of County Commissioners of Marengo county the authority to locate the new court house, proposed to erected, on any other lot in the town of Linden than the lot on which it is now located, and if it has such authority, may it locate the court house any where in the limits of the town as defined in the act of the General Assembly approved February 9, 1871, or must it be located on the territory embraced within the corporate limits at the date of the act approved February 8th, 1871?

The court of County Commissioners has sole and full authority in the matter of determining the necessity for a new court house for a county and in having the same erected and in providing the means for the same, and in these matters they act in, at least, a quasi legislative capacity, and their acts within the bounds of their legal authority and conforming to the requirements of the statute, cannot be questioned, reviewed or annulled by any court.—Code, §§ 1405, 1409; *Hays v. Ahlrich*, 115 Ala. 248; *Com. v. Hearne*, 59 Ala. 37; *Hill v.* 115 Ala. 248; *Comm's v. Hearne*, 59 Ala. 37; *Hill v.*

*Bridges,* 6 Por. 197; *Moore v. Hancock,* 11 Ala. 245; *Parnell v. Comm's.,* 34 Ala. 278; *Comm's. v. Bowie,* 34 Ala. 461; *Askew v. Hale,* 54 Ala. 638; 1 High on Injunctions, § 785.

A county seat is not the lot on which county buildings are located, but it is the town in which such buildings are located. It is not the buildings themselves, but the town or muncipality in which such buildings are. It is the seat of government of the county,—the town or municipality in which the county or other or other courts are held, and where the county officers have their offices and the county business is transacted. 7 Am. & Eng. Ency. Law (2d ed.), pp. 1012-1013 and 1017 and citations; *Whallon v. Circuit Judge,* 51 Mich. 503; *Moffat v. State,* 40 Ind. 217; *In re County Seat,* 4 Pa. Dist. Reports 310-319; *Doolittle v. County Ct.,* 28 W. Va. 158.

WILLIAM H. TAYLOE and WILLIAM CUNNINGHAME, *contra.*—The court house cannot be removed out of the town except by a vote of the people. The subsequent enlargements of the limit of the town does not authorize the removal into the new part.—7 Am. & Eng. Ency., p. 1013 and notes; *State v. Atchison,* 44 Kan. 186; *State v. Smith,* 46 Mo. 60; *State v. Harwi,* 36 Kan. 588; *Code,* § 1406; *State, etc., v. Board, etc.,* 24 Pac. Rep. 87; *Way v. Fox,* 109 Iowa 340; *Odineal v. Barry,* 24 Miss. 9.

SHARPE, J.—Under an act of the General Assembly passed in 1820 lands described as the southwest quarter of section thirty-two in township 16 of range 3 east in Marengo county were fixed by the commissioners as the county seat and were platted as a town called Linden. On a lot reserved for that purpose, a court house was built, which remained the seat of justice until December 4, 1868, when by an act of the General Assembly, the county seat was removed to Demopolis and the court house lot at Linden was sold. At its session in 1869-70 the legislature passed an act which with an amendment at the same session provided for a vote of the people to permanently locate the county seat, but no effective action was had thereunder.

[Marengo County *et al.* v. Matkin.]

The foregoing has no important bearing on the case under consideration, but what follows has more pertinence. On March 1, 1870, an act of the General Assembly incorporated for the first time the town of Linden, and enlarged its limits so as to include with the quarter section originally platted, adjacent lands in township 16. While the corporate limits so stood, and on February 8, 1871, an act of the General Assembly was approved and went into effect, whereby it was provided among other things "that the court house of Marengo county be and the same is hereby removed from Demopolis to Linden in said county and that the same be permanently located at Linden in said county;" and providing further for the removal thither within sixty days of the records and furniture belonging to the county offices, and thereafter the court house site in Linden was repurchased by the county, and has ever since been used as such site. On February 9th, 1871, another act was approved and went into effect, amending the incorporating act so as to add to Linden certain territory theretofore adjoining it and situated in township 15. The county commissioners having lately resolved to build a new court house on the territory last added to Linden, the complainant tax payers filed this bill to enjoin that action.

It has been declared as a general principle that "when a city or town is selected as the county-seat the boundaries of such city or town, as they then exist, become the boundaries of the county seat, and the subsequent inclusion of more territory in such city or town, does not enlarge the county seat."—7 Am. & Eng. Ency. Law, 1013. This statement is not opposed by any authority brought to our notice, and is supported by the decisions rendered in *State v. Smith,* 46 Mo. 60; *Way v. Fox,* 109 Iowa, 340; *State ex rel. etc. v. Harwi,* 36 Kan. 588 and *State ex rel. etc. v. Board Co. Commr's Atchison Co.,* 44 Kan. 186. Each of these cases involved the authority of county commissioners or supervisors to change the place for county offices and sittings of court, to an addition which had been made to a town previously constituting a county seat, and in each the existence of such

authority was denied. In respect of the manner in which the county town was incorporated and enlarged, the case last above cited was strictly analogous to the present case.

In *Way v. Fox, supra,* the town of Garner ambitious to become the county seat, extended its limits over uninhabited lands so as to include the county town of Concord. The county board of supervisors then sought to substitute a county site in the original limits of Garner for the one used at Concord. The Supreme Court, in passing on the legality of the board's proceedings, held, that Garner was not the county seat, and that the supervisors had no power to change the site of the county buildings to that place, and this notwithstanding there was in Iowa a statute defining powers of the board which the court said "seems to authorize a change of site for the court house, provided the place selected is within the limits of the town at which the county seat is located." In the opinion there rendered is was also said: "Had Concord incorporated and extended her limits so as to take in Garner, there would be little doubt of the legality of the proceedings," and that expression is referred to in appellant's brief as favoring the legality of their action. We have no such statute as the one there considered, and that the court's utterance respecting the case supposed was based on the terms of that statute, appears from its preceding statement that "In the absence of statute it seems to be well settled that when a city or town is selected as the county seat, the boundaries of such city or town, as they then exist, become the boundaries of the county seat, and the subsequent inclusion of more territory does not remove the county seat."

These authorities recognize as true that ordinarily the term county seat, applies not merely to the lot and buildings used for transacting public business, but to the territory occupied by such town as may be designated as a county seat. They assume, however, that a county seat is not necessarily coextensive with the town of its location, is not identical with the municipality, and does not move by force of the latter's expansion. We think this principle is correct, and furthermore that

its application is essential to the full maintennance of that part of section 41 of the constitution, which provides that "no court house or county site shall be removed except by a majority vote of the qualified electors of said county voting at an election held for such purpose" etc. Judicial notice of proceedings in the late constitutional convention discloses that this clause was inserted in the organic law in response to public sentiment engendered by supposed abuses by the legislature, of the power it formerly had to change a seat of justice by direct enactment; hence the imperative prohibition of such changes except by the method defined. How this prohibition might be evaded if the General Assembly should extend a county town, as it undoubtedly can, to a distant part of the county, and if the commissioner's court could follow with the court house to the farthest limit of the extension, is apparent. If the removal by such method should be effected, the mischief intended to be forestalled by the constitution would have been fully wrought. In such case the theoretical identity of the old with the new site, would not afford consolation to those from whom the court house might depart, nor would the barren theory of legal identity be left to those persons, if subsequently the legislature should divide the municipality so as to leave the old site separated from the new.

The case is not affected by the fact that the two enactments—the one fixing Linden as the county seat, and the subsequent one adding thereto territory in township 15—were near to each other in point of time or by the fact set up by the answer that the actual reestablishment of the court house and county offices in Linden, occurred after the enlargement of that town. The limits of the county seat were fixed by the act of February 8, 1871, and of the events which thereafter happened whether early or late, were ineffectual to alter the effect of that act.

The conclusion is that the proceedings here assailed were in excess of the powers possessed by the court of county commissioners, and that the decree overruling the demurrer to the bill and the motion to dissolve the temporary injunction, should be affirmed.