No. 28,346.

HARRY SCHNATTERLY, *Appellee* and *Cross Appellant*, v. E. F.
ESLINGER et al., *Appellants* and *Cross Appellees*.

(266 Pac. 657.)

Opinion filed April 21, 1928.

*John A. Etling,* county attorney, for the appellants.

*F. Dumont Smith,* of Hutchinson, and *F. L. Slaughter,* of Kinsley, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action brought by a resident taxpayer to restrain and enjoin the board of county commissioners, the county clerk and county treasurer of Edwards county from diverting or using any of the funds now in their hands, arising from a special levy for the purpose of erecting a courthouse and jail, to the purpose of paying for a courthouse site, and also to restrain and enjoin the defendants from changing the site of the courthouse and from purchasing a new location for the courthouse and jail without a vote of the people of the county.

The amended petition, with appropriate allegations in two separate counts, sets forth the facts and the threatened danger of the doing of both matters charged unless defendants are enjoined and restrained. The defendants demurred to each separate count, and the

court overruled the demurrer as to the diversion of funds, which was the second count, and sustained it as to the change of the site, the first count. By appropriate appeal and cross appeal both questions are brought here for review.

The levy for the building of a courthouse and jail was made under the provisions of sections 19-1507 and 19-1508 of the Revised Statutes and chapter 157 of the Laws of 1927, which is an amendment of R. S. 19-1506. The contention of the appellants, the county and county officers, is that the purchase of a site and the paying therefor are mere incidents to the building of a courthouse and jail just the same as the procuring of furniture and fixtures, and are necessarily within the contemplation of the general purposes of building a courthouse and jail. The appellee urges that to so divert this special fund is a violation of the provisions of article 11, section 4, of the constitution of Kansas, which is as follows:

"No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied."

Appellee cites several Kansas decisions in support of his contention, but a careful examination of them shows that in nearly all of them the diversion of the funds was to another specific fund, or purpose under a specific fund, and embraced no serious contention that the purpose was included within the fund itself. In this case there is no specific building-site fund and no contention that there can be one or that the purchase can properly be made from the general funds. We do not think the question here presented involves a confusion of different funds and the determination of the proper one, but we are positively limited to one fund and must determine whether or not the payment of the courthouse site is within its purposes. Part of this confusion is occasioned by the fact that a reference to the purchase of such site was omitted from the petition of the voters to the board of county commissioners and from the order of the board, as shown by the following portion of the order of the board:

"Whereas, a petition signed by the majority of the legal voters of Edwards county, Kansas, has been presented to the board of county commissioners to erect a courthouse and jail for Edwards county,

"Now, therefore, be it resolved by the board of county commissioners of Edwards county, Kansas, that said request be, and hereby is, granted, and that said board of county commissioners proceed to make the necessary levy for said courthouse and jail and proceed with the erection thereof."

This omission of reference to the courthouse site is in harmony with the first clause of the first sentence of the act of 1927, under which the action of the board was had, which is as follows:

"That whenever a petition signed by a majority of the legal voters of any county in this state, having a population of sixteen thousand (16,000) or less as shown by the votes cast for secretary of state at the last preceding election, shall be presented to the board of county commissioners of such county, requesting it to erect a courthouse, or jail, or courthouse and jail, in accordance with the provisions of this act, said board of county commissioners shall be and hereby are authorized and directed to purchase a site and erect a county building for a courthouse, or for a county jail, or for both such courthouse and jail, at the county seat of the county, and to equip and furnish said building for permanent use as a courthouse, or a jail, or both such courthouse and jail." (Laws 1927, ch. 157, § 1.)

This unbroken sentence itself, separated only by commas, indicates strongly that it was in the mind of the legislature that when a petition and order referring only to the building of a courthouse and jail laid the foundation for a levy the board would be authorized and directed not only to use the fund raised by such levy for the building of a courthouse and jail, but also to purchase a site and to equip and furnish such courthouse and jail. The whole sentence must be read together. The title of the act is sufficiently broad to further show that the use of such funds for such purposes was within the contemplation of the legislature:

"An act relating to county buildings, providing for the purchase of a site and the erection and equipment of a courthouse, or a county jail, or both, in counties having a population of sixteen thousand (16,000) or less, amending section 19-1506 of the Revised Statutes of 1923, and repealing said original section."

The title to chapter 119 of the Laws of 1923 is as follows:

"An act authorizing the board of county commissioners of any county in the state having a population of ten thousand or less to purchase a site for and erect a county courthouse, or a county jail, or both such courthouse and jail, at the county seat, and to levy a tax to pay therefor, and to repeal all acts and parts of acts in conflict herewith."

The title to chapter 139 of the Laws of 1917 is as follows:

"An act authorizing the board of county commissioners of any county in the state having a population of ten thousand or less to purchase a site for and erect a county courthouse, or a county jail, or both such courthouse and jail, at the county seat, and to levy a tax to pay therefor, and to repeal all acts and parts of acts in conflict herewith."

Now, the original act of 1917 consisted of three sections. The second and third have not been changed or amended and are R. S. 19-1507 and R. S. 19-1508. In addition to the reference to purchase of site in the several titles to these acts and amendments and to that in the last part of the first sentence of section 1, is the further reference in the closing sentence of section 1, or R. S. 19-1506:

"The aggregate cost of the purchase of the site and the erection, equipment, and furnishing of said courthouse shall not exceed one hundred and fifty thousand dollars, and of such jail shall not exceed fifteen thousand dollars."

We also find in the second and third sections, R. S. 19-1507 and R. S. 19-1508, the following:

"The said board of county commissioners are hereby authorized to levy an annual tax upon all the taxable property subject to taxation in said county to pay for a site and the erection, equipment, and furnishing of either or both building or buildings. . . . The taxes levied under this act shall be kept in a separate fund, to be known and designated as the 'county building fund.'

"That the said board of county commissioners may proceed to purchase a site and to let contracts and commence the erection of said county building or buildings at any time after the first levy has been made."

Reading the whole of the original statute together, the two amendments thereto, and the title to each of the acts dispels all doubt as to the intention of the legislature to include the cost of the site as a legitimate item of expense to be paid out of the fund arising from such special levy.

"However, the rule as to definite and specific statement should be enforced reasonably; it does not preclude the levying of a gross sum for several different purposes properly embraced within some general designation." (15 C. J. 638.)

The demurrer to the second count of the amended petition should have been sustained.

The other count of the amended petition is the one concerning the changing of the location of the courthouse to another site within the limits of the same city without a vote of the people. The trial court sustained the demurrer to this count, holding in effect that such power was with the board of county commissioners by virtue of chapter 157 of the Laws of 1927, above cited, and the general authority as contained in R. S. 19-212. It is not claimed that there is any specific reference in either of these statutes to such changing of location from one site to another, but that the power and authority given to the board to purchase a site should apply to a change of location as well as the location of the original site. Under the

county seat election law the only choice exercised by the voters of the county is the selection of the town. Then it necessarily remains for the board to make the selection of the building site within the town so chosen. No doubt the use of the strong and rather definite language in R. S. 19-212 was written in 1868 with that duty in view. But as time passed, when temporary buildings had to be replaced and early-constructed ones became inadequate, a change of location in the same town sometimes became desirable. Then it was that the legislature in 1891 passed an act directing just how such change could be made effective.

"That in any case where the county commissioners of any county containing a city of the first or second class, which city is a county seat, have authority to build a new courthouse, and a majority of the electors of the county who vote at any election hereafter held, at which the question shall be submitted, vote in favor of changing the courthouse site from one place within the corporate limits of such city to any other place within such limits of such city, said county commissioners may in their discretion locate the courthouse in accordance with such vote; and said county commissioners may submit the question without petition at any time." (R. S. 19-1502.)

This statute has never been repealed or amended, and makes no exceptions as to population of county or of anything else. Counsel for appellee say the act of 1927 applies especially to counties of 16,000 population or less, and, being a later act, repeals by implication or supersedes the general law of earlier enactment.

"Repeals by implication are not favored, and are sustained only when the later law cannot by any fair and reasonable construction be harmonized with the former. Both laws are to be sustained, if possible." (*Keirsey v. Comm'rs of Labette Co.,* 30 Kan. 576, 579, 2 Pac. 864.)

"The courts cannot say that one statute repeals another statute by implication, or that one part of a section of a statute repeals another part of the same section, unless they are so repugnant to each other that under no circumstances can both be given force and effect." (*Newman v. Lake,* 70 Kan. 848, syl. ¶ 3, 79 Pac. 675.)

There is nothing in this situation to compel a court under such rules to say that the provisions of the later restricted law authorizing the commissioners to purchase a site and the provisions of the law of 1891 are so repugnant as to necessitate a conclusion of repeal of the earlier law by implication. Indeed, we can see how they can conveniently stand together. The later one gives the power and authority to purchase; but as a preliminary to the exercise of such power the voice of the people must be heard as to their choice. Per-

haps the people might prefer that the courthouse be built upon the old site, or, if not, they should say which particular new site would be preferable. "It is a cardinal rule that statutes *in pari materia* must be so construed as to give all of them meaning and effect." (*Bank v. Lyman*, 59 Kan. 410, 413, 53 Pac. 125.) We fail to see any mandatory feature in the term, "Shall be and hereby are authorized and directed." If so, all discretion as to price and terms would be shut off and the purchase would be a compulsatory one, regardless of circumstances. Another well-recognized rule of construction is to leave in the hands of the people, rather than their chosen officers, as much power as a fair and reasonable interpretation of the existing laws will permit, and of this no officer should complain.

Our attention is directed to two early decisions of this court before the enactment of the law of 1891, wherein the court held that the board of county commissioners could not change the location of the courthouse site to an addition which was not a part of the town site at the time the county seat was located, with the suggestion that the implication is that the board could have changed the location to some other site within the original town limits. (*State, ex rel., v. Harwi, County Clerk*, 36 Kan. 588, 14 Pac. 158; *State, ex rel., v. Comm'rs of Atchison Co.*, 44 Kan. 186, 24 Pac. 87.) We do not think that conclusion necessarily follows, but if it does, the later enactment of 1891 prescribed a definite method of making such changes thereafter.

We think the first count states a good cause of action and the demurrer thereto should be overruled.

We observe no good purpose in considering at this time the action of the court in striking out a certain paragraph from the original petition.

The rulings of the trial court are reversed and the cause remanded with instructions to overrule the demurrer to the first count and sustain it to the second.