No. 29,819.

J. E. Lucas, *Appellant*, v. R. L. Bowman, Lymon S. Miller and J. A. Hineman, as The Board of County Commissioners of the County of Lane; R. M. Church, County Clerk, and M. M. Uppendahl, County Treasurer, *Appellees*.

No. 29,820.

J. E. Lucas, *Appellant*, v. R. L. Bowman, Lymon S. Miller and J. A. Hineman, as The Board of County Commissioners of the County of Lane; R. M. Church, County Clerk, and M. M. Uppendahl, County Treasurer, The H. W. Underhill Construction Company, of Wichita, The General Construction and Electric Company, of Wichita, and J. S. Merriam, *Appellees*.

(292 Pac. 765.)

Opinion filed November 8, 1930.

*William Osmond, Elrick C. Cole* and *T. B. Kelley,* all of Great Bend, for the appellant.

*J. E. Mowery,* county attorney, *Austin M. Cowan,* of Wichita, *C. E. Vance* and *A. M. Fleming,* both of Garden City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: These two cases, tried separately in the court below and consolidated here, are by a resident property owner and tax-payer to enjoin the board of county commissioners from taking cer-

tain steps with respect to the building of a new courthouse and jail. On March 3, 1930, there was presented to the board of county commissioners of Lane county a petition, signed by a majority of the legal voters of the county, petitioning the board of county commissioners "to purchase a site for a courthouse and jail, erect a fireproof courthouse and jail in the city of Dighton, . . . and equip said building at a total cost of not to exceed $115,000." Pursuant to this petition the county commissioners procured an architect, who prepared plans and specifications for the courthouse and jail, and also proceeded to select a site on which to erect the courthouse and jail, and to purchase the same at a cost of $2,450, and to advertise for bids for the construction of the work. Plaintiff brought the first action (No. 29,819 here) to enjoin the purchase of the site and from letting the contract for the erection of the courthouse and jail. A restraining order was granted on the filing of the case, which order permitted defendants to receive and open the bids advertised for. On a hearing on the merits the court found and adjudged that the defendants have the right to acquire, by purchase, the site in question and to erect a courthouse and jail thereon, provided the total cost of the site, buildings, equipment and furnishings should not exceed the sum of $115,000. The court found and adjudged that defendants be enjoined from entering into contracts calling for the expenditure of more than $115,000, and from the expenditure of such a sum for the erection of the courthouse and jail as not to leave out of the $115,000 sufficient to provide for the purchase and installation of furniture and fixtures. The plaintiff has appealed from that part of the judgment holding that defendants have the right to purchase a site other than the old site for a courthouse and jail in the city of Dighton, and refusing an injunction preventing defendants from erecting a courthouse and jail on the site purchased by defendants. It was conceded by the pleadings and at the trial that the population of Lane county is less than 10,000, that the county had a site on which was situated the old courthouse and jail, and that the county seat of Lane county is Dighton, a city of the third class. Plaintiff argues that having a site for a courthouse, defendants had no statutory authority for changing the courthouse site without a vote of the people (*Schnatterly v. Eslinger*, 126. Kan. 9, 266 Pac. 657), and it is conceded that no election was held on that question. Appellees point out that the decision in the case of *Schnatterly v. Eslinger*, supra, was based on R. S. 19-1502, which, by its terms, applies only

to counties in which the county seat is a city of the first or second class, hence that the decision is not in point in the case before us. The action of defendants in this case was under the authority of the general powers conferred by R. S. 19-212 and by R. S. 19-1506 (originally Laws 1917, ch. 139). This section last cited requires a petition of a majority of the legal voters of the county. It therefore expresses the wish of the electors, much as an election would do, and provides for a petition specifically authorizing the county commissioners to purchase a site. It is applicable only in counties in which the population is less than 10,000. This statute was enacted at a time in the history of the state when all counties had been organized and, presumably at least, had sites for their respective courthouses and jails. There could have been no purpose in putting in this statute authority for county commissioners to select a site in the limited counties to which it applied unless it was intended to give the right to change from the old site to a new one which should be selected, and this can be done under the statute only when a petition is presented to the county commissioners which has been signed by a majority of the legal voters of the county, which itself expresses the will of a majority of the electors. We see nothing inherently wrong with such a provision. Defendants did no more in this particular than the petition and statute authorized them to do, and the judgment of the court below on this appeal must be affirmed.

Pending the hearing of the first case, defendants had received and opened bids and made contracts with bidders contingent upon the result of the action pending. After the decision of that case the county commissioners and their architect and the bidders met, the tentative contracts were rescinded or modified, certain items of the work enumerated therein were omitted or modified, and the contracts reëxecuted at sums low enough to insure the procuring of the site, completion of the building and furnishing the same at a total cost not to exceed $115,000. The second action (No. 29,820 here) was brought by the same plaintiff to enjoin the carrying out of those contracts, on the ground there had been no plans specifically prepared and filed by the architect, nor had there been any advertisement for bids on the modified plans. On the trial of that issue the judgment of the court was against plaintiff, and he has appealed.

Appellees make the point that plaintiff did not allege nor show that as a taxpayer he was in any way injured by the irregularities,

if any there were, in the letting of these contracts, and that such a showing is essential before plaintiff, as a taxpayer, can maintain an action. The point appears to be well taken, but passing that, we are unable to see anything seriously wrong with the judgment of the court. Plans and specifications for the courthouse and jail had been prepared and filed, bids had been advertised for and had been received. The only thing wrong with the contracts in the first place was that, in the aggregate, by the adding of the sum necessary to furnish the building, they might exceed $115,000. The tentative contracts entered into contained the provision, usual in building contracts, providing that the owner, without invalidating the contract, might make changes, altering, adding to, or deducting from the work, the contract sum being adjusted accordingly, the amount to be paid or deducted because of the change to be determined by estimate and acceptance in a lump sum, by unit prices named in the contract or subsequently agreed to, or by cost and percentage, or cost and a fixed fee; in any case the architect to certify to the amount. Many of the changes made were in unit prices for such things as a bronze tablet, Venetian blinds, outside shutters and screens for windows, which were omitted. Some of the items were for alternates, in which the less expensive was selected. Others applied to methods of finish and the like, all being computed and certified by the architect. In short, all changes made in the structure were of a character which did not radically change plans and specifications, and each of them could have been made at any time as the work progressed. They were made before the work started, to accord with the judgment of the court in the first case that they should not exceed a named sum. It is not contended by plaintiff that had there been a second advertisement for bids there would likely have been any reduction in the cost of the contracts as finally let. Indeed, the evidence is that changes in the prices of materials and the fact that the construction would have been delayed until the winter season would have substantially increased the cost. It cannot be said, therefore, that the plaintiff, or any other taxpayer of the county, was damaged in any way by the business being handled as it was. Plaintiff does not seriously contend that there would have been any saving to the county, or to its taxpayers, by readvertisement for bids. The sole contention is that the procedure did not conform to the statute requiring bids for public work.. On this point we think the judgment of the court below was correct.

There had been plans and specifications properly prepared and filed. Bids for the work had been advertised for and received. The only objection to the bids as originally made was as to the amount in the aggregate. This was modified before contracts were finally let in a way that might have been made after the contracts had been executed, and we see nothing seriously wrong with it. Appellants cite *Bridge & Iron Co. v. Labette County,* 98 Kan. 292, 158 Pac. 8, but that case is not in point. It did not involve a change of plans after bids were received, but turned on the sufficiency of the original plans and specifications, and the court held that these were not sufficiently complete and specific to enable bidders to understand what was wanted. There is no contention of that character here.

The judgment of the court below is affirmed.