FILED 146
Mr. Jerome E. Brant County Counselor, Clay County 17 East Kansas Street Liberty, Missouri 64068
Dear Mr. Brant:
This opinion is in response to your question asking as follows:
 "Is it within the power of the Clay County Court to purchase a site and construct administrative offices and/or jail upon same, if the site is outside of the original seat of justice, or the seat of justice as it might have been increased up to and including the year of 1945?"
You also state:
 "Clay County, Missouri, a first class county without a charter form of government, which has experienced rapid growth within the past several years, is in need of new jail facilities, administrative offices, and potentially in the future, of additional court rooms. Sites for this new construction have been considered within the original seat of justice, and within areas annexed to the City of Liberty, Missouri which contains the county seat or seat of justice, which said annexations have occurred since 1945.
 "This question has been raised by various concerned parties. It came to the attention of the County Court. The County Court requested that the County Counselor prepare a request for an Attorney General's opinion so that we might have that opinion before proceeding to consider the various potential sites.
 "The original seat of justice was accepted by commissioners at the time of the founding of Clay County in 1823. This original seat of justice contained fifty acres of land.
 "County offices, court house and jail have been since that time within the confines of this limitation. The City of Liberty, Missouri annexed certain additions to the City of Liberty from that time until 1945, but has experienced substantial additional land acquisitions since 1945.
 "A copy of the 50-Acre grant of land for the seat of justice in Clay County is attached."
Prior to the enactment of the Constitution of 1875, the Missouri Supreme Court in State ex rel. Norman v. Smith,46 Mo. 60 (1870) held that the seat of justice in a county is the place originally selected in pursuance of law and cannot be subsequently removed to a site within the extent of the town limits. Thus, at that time, an addition to a county seat was not considered to be the established seat of justice within the purview of the statute.
However, the provisions of the 1875 Constitution, Article IX, Section 2, provided:
 "The General Assembly shall have no power to remove the county seat of any county, but the removal of county seats shall be provided for by general law; and no county seat shall be removed unless two-thirds of the qualified voters of the county, voting on the proposition at a general election, vote therefor; and no such proposition shall be submitted oftener than once in five years. All additions to a town which is a county seat shall be included, considered and regarded as part of the county seat." (Emphasis added)
In Babcock v. Hahn, 75 S.W. 93 (1903), the Missouri Supreme Court held that under the express provisions of the 1875 Constitution quoted above, the office of the recorder of deeds could be removed to any place within the city limits including a place within an addition to the city which was not a part of the original seat of justice.
At the time of the 1944 Constitutional Convention the delegates retained the previous constitutional prohibition against the removal of the county seat unless by two-thirds vote of the qualified voters of the county voting on the proposition at a general election but omitted the provision of the 1875 Constitution which we have quoted above. Article VI, Section 6. In doing so it was stated by Mr. Bradshaw, one of the delegates, that the revision did not change the fundamental provisions of the 1875 Constitution. After quoting in full the provisions of Article IX, Section 2 of the 1875 Constitution, the delegate stated:
 "We are omitting as surplusage, the section as we have it drafted, retaining the essential provisions of the old section." (Debates, Second Typing, p. 2067)
Clearly a remark made at the Constitutional Convention is not binding upon the courts. However, it is worthy of consideration in attempting to resolve ambiguities that may exist.Gartenbach v. Board of Education of the City of St. Louis,204 S.W.2d 273 (Mo. 1947). The debates of the Constitutional Convention therefore clearly indicate that no change was intended but that only "surplusage" was to be removed.
Further, it is doubtful that the delegates to the Constitutional Convention intended to render invalid Section 49.380, RSMo, which was enacted prior to the adoption of the 1945 Constitution and which permits the superintendent of buildings appointed by the county to select a suitable site within the corporate limits of the town known as county seat for county buildings when none is available within the limits of the "original town known as the established seat of justice." That is, under Section 49.310, RSMo, the county court, with certain exceptions not relevant here, is required to erect at the established seat of justice a "courthouse, jail and necessary fireproof buildings for the preservation of the records of the county." Under Section 49.330, RSMo, the county court has authority to appoint some suitable person to superintend the erection of buildings. And Section 49.370, RSMo, provides:
 "The county court shall designate the place whereon to erect any county building, on any land belonging to such county, at the established seat of justice thereof."
Further, Section 49.380, RSMo, provides if there is no suitable ground for that purpose belonging to said county within the limits of the original town known as the established seat of justice, the superintendent shall select a proper piece of ground anywhere within the corporate limits of the town known as the county seat, and may purchase or receive by donation a lot or lots of ground for that purpose, and shall take a good and sufficient deed in fee simple for the same to the county, and shall make report of his proceedings to the circuit court at its next sitting.
We note also that Section 49.520, RSMo Supp. 1975, provides:
 "Whenever the governing body of any first class county finds it necessary for the public need or convenience, or for the preservation of the public records to build, repair or remodel a courthouse, office buildings, court buildings or other public buildings in the county or to purchase, construct or extend buildings and the land upon which the buildings are situated, to be used by the county for courthouses or other proper county purposes, the county is authorized and empowered to purchase, construct or extend courthouses, office buildings, court buildings, and other buildings used for county purposes upon its own land or to acquire by purchase the land upon which the buildings are to be built."
We are of the view that this section must be read in light of Article VI, Section 6 of the Constitution which provides that no county seat shall be removed except by a vote of two-thirds of the qualified electors of the county voting thereon and together with the statutes we have noted above respecting the location of county buildings. Thus, we do not believe that Section 49.520 constitutes authority for the county court of a first class county to erect such buildings any place in the county except the county seat. In reaching this conclusion we have taken into consideration the fact that the original purpose of this section and other sections originally enacted with it in the Laws of 1961, p. 278, was to authorize the issuance of revenue bonds for such purposes.
We are of the view that the provisions of Article VI, Section 6 of the 1945 Constitution must be interpreted to define the county seat as being anywhere within the corporate limits of the town known as the county seat and that such definition should not be restricted to the original town known as the established seat of justice. Thus, under our interpretation county buildings could be located under the authority and conditions of Section 49.380 anywhere within the corporate limits of the town known as the county seat. Any other conclusion would render invalid the provisions of Section 49.380. It is a well-settled principle of constitutional construction that only when there is a clear conflict between a legislative enactment and the Constitution are the courts warranted in declaring the law to be void. In the Matter of Burris, 66 Mo. 442, 450 (1877);Borden Co. v. Thomason, 353 S.W.2d 735, 743 (Mo. 1962).
We conclude that the term "county seat" as used in ArticleVI, Section 6 of the Missouri Constitution of 1945 includes not only the original town known as the established seat of justice but also any additions to the town. We conclude that Section49.380 is constitutional and that it is clearly within the province of the legislature to require that county property be located within the limits of the original town known as the established seat of justice unless it is determined that no suitable ground for the purpose intended is within such limits in which case the superintendent has the authority to select a piece of ground anywhere within the corporate limits of the town known as the county seat.
CONCLUSION
It is the opinion of this office that under Section 49.370, RSMo, the county court shall designate the place on which county buildings are to be erected at the seat of justice, and under Section 49.380, RSMo, the superintendent of county buildings appointed under Section 49.330, RSMo, has the authority to select a place anywhere within the corporate limits of the town known as the county seat if there is no suitable ground for the purpose intended belonging to the county within the limits of the original town known as the established seat of justice.
The foregoing opinion, which I hereby approve, was prepared by my assistant, John C. Klaffenbach.
Very truly yours,
 JOHN C. DANFORTH Attorney General